## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: **Brian Robert Bulakowski aka Bullet Capital Group, LLC dba Massage Envy aka Bullet Capital Group II, LLC dba Massage Envy** | Case No. **19-50309-JAM** |

) 

) Ch **7**
)
)
)
)

**Barb Essman**

### RELIEF FROM STAY WORKSHEET-REAL ESTATE

I  Authorized Signer  (Name and Title) of PNC Bank, National Association  (hereinafter,

"Movant") hereby declare (or certify, verify, or state) as follows:

### BACKGROUND INFORMATION

1.  Real property address which is the subject of this motion: **7 Rajcula Farm Road, Brookfield, CT, 06804**

2.  Lender Name: Guaranteed Rate, Inc.

3.  Date of Mortgage: August 24, 2012

4.  Post-Petition payment address: 3232 Newmark Drive, Miamisburg, OH45342

5.  The manner in which the movant perfected its interest in the property: Recorded Mortgage

6.  All other material liens and encumbrances on the property:

Radius Bank $658,760.00

### DEBT/VALUE REPRESENTATIONS

7.  Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $ 411,039.51 as of September 10, 2019

8.  Movant's estimated market value of the real property:$500,000.00

9.  Source of estimated valuation: Debtor's Schedule A

## STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:

    A.    Amount of principal: $ 394,293.12
    B.    Amount of interest: $ 3,206.12
    C.    Amount of escrow (taxes and insurance): $ 4,590.49
    D.    Amount of forced placed insurance expended by Movant: $ _____
    E.    Amount of Attorney's fees billed to Debtor(s) pre-petition: $ 0.00
    F.    Amount of pre-petition late fees, if any, billed to Debtor(s): $240.72

11. Contractual interest rate: 4.25%

(If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:)

12. Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:

12 @ $15 = $180 property inspections; $60 recordation fee

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:                    .)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT (AS OF (September 10, 2019)

13. Date last payment was received: April 16, 2019

14. Alleged total number of payments post-petition from filing of petition through payment due on September 1, 2019; 6

15. List all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
|---|---|
| 4-1-19 | 3,201.18 |
| 5-1-19 | 3,201.18 |
| 6-1-19 | 3,201.18 |
| 7-1-19 | 3,201.18 |
| 8-1-19 | 3,201.18 |
| 9-1-19 | 3,201.18 |
| Totals: | $19,207.08 |

## SCHEDULE OF PAYMENTS THAT WERE RECEIVED

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|---|---|---|---|---|---|
| 4/16/2019 | 3,201.18 | 2,204.87 | 996.31 | | |
| Totals: | $3,201.18 | $2,204.87 | $996.31 | $0.00 | |

16. Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $ 950.00

17. Amount of Movant's filing fee for this motion: $181.00

18. Only to the extent movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition: $0.00

19. Only to the extent movant is seeking payment in the motion, the amount of Movant's post-petition inspection fees:$0.00
Only to the extent movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion: $0.00

20. Only to the extent movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00

21. Only to the extent movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable: $0.00

22. Only to the extent movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: $0.00

23. Amount and date of post-petition payments offered by the Debtor and refused by the Movant:

$_____ Date:_____

$_____ Date:_____

$_____ Date:_____

## REQUIRED ATTACHMENTS TO MOTION

The following exhibits are attached to the motion in support of the relief requested.

1.  Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. See Exhibits A, B, and C.

2.  Copies of documents establishing proof of standing to bring this Motion.
    Same as above

3.  Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of mortgage containing the applicable recording information.
    See Exhibit B.

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

[remainder of page intentionally left blank, text continued on next page]

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows:

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on _10- 0 3-2019_ [date]

_____
[signature]    **Barb Essman**

**Authorized Signer**

_____
[title]

Subscribed and sworn to before me this _10/3/19_ [date]

_____
Notary Public: [name]
My commission expires: _9/28/21_



Indicates Redacted Information

EXHIBIT A

MIN: ████████

**NOTE**

Loan Number: ████████

AUGUST 24, 2012
[Date]

FAIRFIELD
[City]

CONNECTICUT
[State]

7 RAJCULA FARM RD, BROOKFIELD, CONNECTICUT 06804

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 448,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GUARANTEED RATE, INC., A DELAWARE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on OCTOBER 1 2012. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on SEPTEMBER 1, 2042, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 4064 NORTH LINCOLN, #324, CHICAGO, ILLINOIS 60618

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,204.87

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01

Page 1 of 3

DocMagic ePforms
www.docmagic.com

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
BRIAN BULAKOWSKI                 -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                                 -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                                 -Borrower                                                 -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                          Page 3 of 3

DocMagic *eForms*
www.docmagic.com

# ENDORSEMENT ALLONGE
## To be made a part of the Mortgage Note reference herein

Re: Mortgage Note Dated:      **08/24/2012**    Loan Number: ▉▉▉▉▉▉▉

Mortgagors:                            **Brian Bulakowski**
Property Address:                  **7 Rajcula Farm Rd**
                                           **Brookfield, CT  06804**

Loan Amount:                        **$448,200.00**

PAY TO THE ORDER OF:

WITHOUT RECOURSE:

GUARANTEED RATE, INC.
A DELAWARE CORPORATION
3940 NORTH RAVENSWOOD
CHICAGO, IL 60613

**Kelly Opalko**
POST CLOSING SPECIALIST

Doc ID: 000886040014 Type: LAN
Book 655 Page 159 - 172
File# 3062

EXHIBIT B

After Recording Return To:
GUARANTEED RATE, INC.
3940 N RAVENSWOOD
CHICAGO, ILLINOIS 60613
Loan Number:

Indicates Redacted
Information

———————— [Space Above This Line For Recording Data] ————————

# OPEN-END MORTGAGE DEED

**MIN**                                          **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated   AUGUST 24, 2012       , together with all Riders to this document.
**(B)  "Borrower"** is  BRIAN BULAKOWSKI AND LISA BULAKOWSKI

Borrower is the mortgagor under this Security Instrument.
**(C)  "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)  "Lender"** is  GUARANTEED RATE, INC.

Lender is a  DELAWARE CORPORATION                                          organized
and existing under the laws of  ILLINOIS
Lender's address is   3940 N RAVENSWOOD, CHICAGO, ILLINOIS 60613

**(E)  "Note"** means the promissory note signed by Borrower and dated  AUGUST 24, 2012
The Note states that Borrower owes Lender  FOUR HUNDRED FORTY-EIGHT THOUSAND TWO HUNDRED AND 00/100           Dollars (U.S. $ 448,200.00       ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 1, 2042       .
**(F)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Second Home Rider
☐ Condominium Rider      ☐ Other(s) [specify]

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the      **TOWN**      of      **BROOKFIELD**,
         [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3007 01/01      Page 2 of 13      DocMagic *eForms*
www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 09907000

which currently has the address of 7 RAJCULA FARM RD

[Street]

BROOKFIELD , Connecticut 06804 ("Property Address"):

[City] [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of

DocMagic eForms
www.docmagic.com

time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds,

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3007 01/01                                    Page 4 of 13                                    DocMagic eForms
                                                                                                   www.docmagic.com

Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires,

Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

DocMagic eForms
www.docmagic.com

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3007 01/01                                    Page 8 of 13                              DocMagic eForms
www.docmagic.com

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

DocMagic EForms
www.docmagic.com

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including, but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require

immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BRIAN BULAKOWSKI                -Borrower

_____ (Seal)
LISA BULAKOWSKI                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Signed, sealed and delivered in the presence of:

Witness

Witness: A. J. DiPetrio

CONNECTICUT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3007 01/01                     Page 12 of 13

DocMagic @Forms
www.docmagic.com

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of __CONNECTICUT__

County of __FAIRFIELD__

The foregoing instrument was acknowledged before me this __AUGUST 24, 2012__

by __BRIAN BULAKOWSKI AND LISA BULAKOWSKI__

_____

Signature of Person Taking Acknowledgment

Title

**Leticia Crespo Esq.**
**Comm. of Sup. Ct**
**Commis is Permanent**

Serial Number, if any

(Seal)                                      My commission expires: _____

Loan Number: ███████

Date: AUGUST 24, 2012

Property Address: 7 RAJCULA FARM RD
BROOKFIELD, CONNECTICUT 06804

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL that certain piece or parcel of land, situate in the Town of Brookfield, County of Fairfield and State of Connecticut, shown and designated as Lot No. 4 on a certain map entitled, "TOWN OF BROOKFIELD FAIRFIELD COUNTY, CONN. FINAL SUBDIVISION MAP LONG MEADOW HEIGHTS GARY DOSKI WILLIAM CLINKARD GERALDINE R. NEIDHART, OWNERS GARY DOSKI WILLIAM D. CLINKARD, SUBDIVIDERS MAP PREPARED BY MASCIA & VALKO, INC., DATE: 2-28-87 SCALE 1" = 100' REV. 4-11-88, REV. 6-27-88, REV. 7-18-88, REV. 10-20-88, REV. 12-15-88, REV. 1-17-89, REV. 4-25-89, CERTIFIED CLASS A-2 SURVEY", which map is on file in the office of the Town Clerk of the Town of Brookfield in Map Book 33 at Page 9.
TOGETHER with the right to pass and repass, in common with others, over the roadway known as Rajcula Farm Drive.

A.P.N. # : ███████

DocMagic *eForms*
www.docmagic.com

Received for Record at Brookfield, CT
On 09/04/2012 At 8:35:55 am



Exhibit C

This Instrument Prepared By, Recording Requested
By and Return To:
Jennifer Day, 937-910-4875
PNC Mortgage, a Division of PNC Bank, NA
3232 Newmark Drive
Miamisburg, Ohio 45342



· Doc ID:   001735070002 Type: LAN
Book 734 Page 349 - 350
· File# 3260

## SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Assignment of Mortgage**

PNC#:   xxxxx                                    **Recording District: TOWN OF BROOKFIELD**
MIN:                    **MERS Phone: 888-679-6377**

For value received, the undersigned, hereby assigns and transfers to: PNC BANK, NATIONAL ASSOCIATION
located at 3232 Newmark Drive, Miamisburg, Ohio 45342, all its right, title and interest in and to that certain
Mortgage executed by:

**Borrower(s): BRIAN BULAKOWSKI AND LISA BULAKOWSKI**

To Mortgage Electronic Registration Systems, Inc. ("MERS"), as Nominee for Guaranteed Rate, Inc., its successors
and assigns in the amount of: $448,200.00, dated 08/24/2012, recorded 09/04/2012 in Book/Volume: 655 Page: 159
of the Official Records of the TOWN OF BROOKFIELD, Connecticut describing the land therein:

Property Address:      **7 RAJCULA FARM RD, BROOKFIELD, CONNECTICUT 06804**
                       See attached for Legal Description

Dated:   **9 · 28 · 2017**

Mortgage Electronic Registration Systems, Inc.
("MERS"), as Nominee for Guaranteed Rate, Inc.
its successors and assigns

State of Ohio           County of Montgomery        Joni L. Mays, Assistant Secretary

On   **9 · 28 · 2017**   before me, Hope M. Harvey the undersigned, a Notary Public in and for the State of
Ohio, personally appeared Joni L. Mays, Assistant Secretary of Mortgage Electronic Registration Systems, Inc.
("MERS"), as Nominee for Guaranteed Rate, Inc. its successors and assigns personally known to me to be the
person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in
her authorized capacity, and that for her signature on the instrument the person, or the entity upon behalf of which
she acted, executed the instrument.



Hope M. Harvey, Notary Public in and for the State of Ohio
My Commission Expires: 6/25/2018
My County of Residence: Greene

ALL that certain piece or parcel of land, situate in the Town of Brookfield, County of Fairfield and State of Connecticut, shown and designated as Lot No. 4 on a certain map entitled, "TOWN OF BROOKFIELD FAIRFIELD COUNTY, CONN. FINAL SUBDIVISION MAP LONG MEADOW HEIGHTS GARY DOSKI WILLIAM CLINKARD GERALDINE R. NEIDHART, OWNERS GARY DOSKI WILLIAM D. CLINKARD, SUBDIVIDERS MAP PREPARED BY MASCIA & VALKO, INC., DATE: 2-28-87 SCALE 1" = 100' REV. 4-11-88, REV. 6-27-88, REV. 7-18-88, REV. 10-20-88, REV. 12-15-88, REV. 1-17-89, REV. 4-25-89, CERTIFIED CLASS A-2 SURVEY", which map is on file in the office of the Town Clerk of the Town of Brookfield in Map Book 33 at Page 9.

TOGETHER with the right to pass and repass, in common with others, over the roadway known as Rajcula Farm Drive.



EXHIBIT D

<span style="background:black">     </span> Indicates Redacted
Information

This Document Prepared By:
**CYNTHIA FRAZIER**
**PNC MORTGAGE, A DIVISION OF**
**PNC BANK, NATIONAL**
**ASSOCIATION**
**3232 NEWMARK DR**
**MIAMISBURG, OH 45342**
**(888) 224-4702**

When Recorded Mail To:
**PNC BANK, N.A.**
**P.O. BOX 8800**
**DAYTON, OH 45401**

Tax/Parcel #: ▮▮▮▮▮▮

_____[Space Above This Line for Recording Data]_____

| | |
|---|---|
| **Original Principal Amount: $448,200.00** | **Freddie Mac Loan No.** ▮▮▮▮▮ |
| **Unpaid Principal Amount: $395,098.98** | **Loan No:** ▮▮▮▮▮ |
| **New Principal Amount: $400,161.65** | |
| **Capitalization Amount: $5,062.67** | |

## LOAN MODIFICATION AGREEMENT (MORTGAGE)
### (To a Fixed Interest Rate)

**IF THE LOAN MODIFICATION AGREEMENT MUST BE RECORDED, TWO ORIGINAL LOAN MODIFICATION AGREEMENTS MUST BE EXECUTED BY THE BORROWER: ONE ORIGINAL IS TO BE FILED WITH THE NOTE AND ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED**

This Loan Modification Agreement (the "Agreement"), made and effective this 22ND day of APRIL, 2019, between PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION ("Lender"), whose address is 3232 NEWMARK DR, MIAMISBURG, OH 45342, and BRIAN BULAKOWSKI AND LISA BULAKOWSKI ("Borrower"), whose address is 7 RAJCULA FARM RD, BROOKFIELD, CONNECTICUT 06804, modifies and amends certain terms of Borrower's indebtedness evidenced by (1) the Note (the "Note") to Lender dated AUGUST 24, 2012, in the original principal sum of U.S. $448,200.00 and secured by (2) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and Rider(s), if any, the Note bearing the same date as and recorded on SEPTEMBER 4, 2012

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161
▮▮▮▮▮

Page 1

in INSTRUMENT NO. 000886040014  BOOK 655  PAGE 159, of the OFFICIAL Records of TOWN OF BROOKFIELD , CONNECTICUT. The Security Instrument covers the real and personal property described in the Security Instrument and defined as the "Property", located at:

**7 RAJCULA FARM RD, BROOKFIELD, CONNECTICUT 06804**
[Property Address]

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, Lender and Borrower agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. Current Balance. As of MAY 1, 2019, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $400,161.65.

2. Interest Rate. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.2500%, beginning MAY 1, 2019, both before and after any default described in the Note. The yearly rate of 4.2500% will remain in effect until principal and interest is paid in full.

3. Monthly Payments and Maturity Date. Borrower promises to make monthly payments of principal and interest of U.S. $1,735.18, beginning on the 1ST day of JUNE, 2019, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on MAY 1, 2059, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification Agreement, the Borrower will pay these amounts in full on the Maturity Date.

4. Place of Payment. Borrower must make the monthly payments at
   **3232 NEWMARK DR, MIAMISBURG, OH 45342**
   or such other place as Lender may require.

5. Partial Payments. Borrower may make a full prepayment or partial prepayments without paying any prepayment charge. Lender will use the prepayments to reduce the amount of principal that Borrower owes under the Note. However, Lender may apply the Prepayment to the accrued and unpaid interest on the prepayment amount before applying the prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no changes in the due dates or the amount of the monthly payments unless Lender agrees in writing to those changes.

6. Property Transfer. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 of the Security Instrument, within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 2

invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

7. <u>Compliance with Covenants</u>. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

8. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 3

In Witness Whereof, I have executed this Agreement.

Borrower: **BRIAN BULAKOWSKI**

Date 5/7/19

Borrower: **LISA BULAKOWSKI**

Date 5/7/19

1st Witness

2nd Witness

1st Witness

2nd Witness

_____ [Space Below This Line for Acknowledgments] _____

Acknowledgment for Individual

State of Connecticut

County of Fairfield

On this the 7th day of May, 2019, before me, Linda D. Gaspar (name of notary), personally appeared **BRIAN BULAKOWSKI, LISA BULAKOWSKI**, known to me (or satisfactorily proven) to be the person(s) whose name(s) are (is or are) subscribed to the within instrument and acknowledged that They (he/she/they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand.

Date: 5/7/19

Notary Public

Print Name: Linda D. Gaspar

My Commission Expires:

4/30/2020

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 4

In Witness Whereof, the Lender have executed this Agreement.

PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

By ~~EILEEN BURRALL~~ _Loretta Dunkman_ (print name)          5/13/19
Mortgage Document Officer (title)                              Date

_Bonnie Morris_
Witness

_Bonnie Morris_
Witness – Printed Name

_John K. Schwab_
Witness

_JOHN K. SCHWAB_
Witness – Printed Name

_____ [Space Below This Line for Acknowledgments] _____

LENDER ACKNOWLEDGMENT

State of _Ohio_

County of _Montgomery_

The foregoing instrument was acknowledged before me this _____ 5-13-19 _____
(date) by ~~EILEEN BURRALL~~ _Loretta Dunkman_, the MORTGAGE DOCUMENT OFFICER of PNC MORTGAGE, A
DIVISION OF PNC BANK, NATIONAL ASSOCIATION, a national association, on behalf of the national
association

_Elaine M Ruble_
Notary Public

Printed Name: _Elaine M Ruble_

My commission expires: _1-2-2023_

Elaine M Ruble, Notary Public
In and for the State of Ohio
My Commission Expires Jan. 2, 2023

PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION
3232 NEWMARK DR
MIAMISBURG, OH 45342

MULTISTATE LOAN MODIFICATION AGREEMENT (To a Fixed Interest
rate) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5161

Page 5

Date: **APRIL 22, 2019**
Loan Number: ▮▮▮▮▮▮
Lender: **PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION**

Borrower: **BRIAN BULAKOWSKI, LISA BULAKOWSKI**

Property Address: **7 RAJCULA FARM RD, BROOKFIELD, CONNECTICUT 06804**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____   5/7/19
Borrower                                                          Date
**BRIAN BULAKOWSKI**

_____   5/7/19
Borrower                                                          Date
**LISA BULAKOWSKI**

Date: APRIL 22, 2019
Loan Number: ███████

Lender: PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

Borrower: BRIAN BULAKOWSKI, LISA BULAKOWSKI

Property Address: 7 RAJCULA FARM RD, BROOKFIELD, CONNECTICUT 06804

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

### In consideration of PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____        6/7/19
BRIAN BULAKOWSKI                              Date

_____        5/7/19
LISA BULAKOWSKI                               Date

## EXHIBIT "A"

## LEGAL DESCRIPTION

ALL that certain piece or parcel of land, situate in the Town of Brookfield, County of Fairfield and State of Connecticut, shown and designated as Lot No. 4 on a certain map entitled, "TOWN OF BROOKFIELD FAIRFIELD COUNTY, CONN. FINAL SUBDIVISION MAP LONG MEADOW HEIGHTS GARY DOSKI WILLIAM CLINKARD GERALDINE R. NEIDHART, OWNERS GARY DOSKI WILLIAM D. CLINKARD, SUBDIVIDERS MAP PREPARED BY MASCIA & VALKO, INC., DATE: 2-28-87. SCALE 1" = 100' REV. 4-11-88, REV. 6-27-88, REV. 7-18-88, REV. 10-20-88, REV. 12-15-88, REV. 1-17-89, REV. 4-25-89, CERTIFIED CLASS A-2 SURVEY", which map is on file in the office of the Town Clerk of the Town of Brookfield in Map Book 33 at Page 9.

TOGETHER with the right to pass and repass, in common with others, over the roadway known as Rajcula Farm Drive.

**Fill in this information to identify your case and this filing:**

Debtor 1   **BRIAN**   **ROBERT**   **BULAKOWSKI**
First Name   Middle Name   Last Name

Debtor 2
(Spouse, if filing)   First Name   Middle Name   Last Name

United States Bankruptcy Court for the: District of Connecticut

Case number   19-50309

Exhibit E

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest in

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.** 7 Rajcula Farm Road
Street address, if available, or other description

Brookfield   CT   06804
City   State   ZIP Code

Fairfield
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?   Current value of the portion you own?
$ 500,000.00   $ 500,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

_____

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2.** _____
Street address, if available, or other description

_____

City   State   ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?   Current value of the portion you own?
$ _____   $ _____

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

_____

☐ Check if this is community property (see instructions)

Debtor 1    **BRIAN**              **ROBERT**         **BULAROWSKI**
            First Name   Middle Name   Last Name
            Case number (if known) 19-50309

| | | |
|---|---|---|
| 1.3: _____<br>Street address, if available, or other description<br><br>_____<br><br>_____<br>City          State      ZIP Code<br><br>_____<br>County | **What is the property?** Check all that apply.<br>☐ Single-family home<br>☐ Duplex or multi-unit building<br>☐ Condominium or cooperative<br>☐ Manufactured or mobile home<br>☐ Land<br>☐ Investment property<br>☐ Timeshare<br>☐ Other_____<br><br>**Who has an interest in the property?** Check one.<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br><br>Other information you wish to add about this item, such as local<br>property identification number: _____ | Do not deduct secured claims or exemptions. Put<br>the amount of any secured claims on *Schedule D:*<br>*Creditors Who Have Claims Secured by Property.*<br><br>**Current value of the   Current value of the**<br>**entire property?        portion you own?**<br><br>$_____   $_____<br><br>**Describe the nature of your ownership**<br>**interest (such as fee simple, tenancy by**<br>**the entireties, or a life estate), if known.**<br><br>_____<br><br>☐ **Check if this is community property**<br>(see Instructions) |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages
   you have attached for Part 1. Write that number here. .......................................➔  | $    500,000.00 |

---

## Part 2:   Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles
you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☐ No
   ☑ Yes

| | | |
|---|---|---|
| 3.1.  Make:          Jeep<br>Model:        Cherokee<br>Year:         2012<br>Approximate mileage: 115000<br>Other information:<br>[                    ] | **Who has an interest in the property?** Check one.<br>☑ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br><br>☐ **Check if this is community property** (see instructions) | Do not deduct secured claims or exemptions. Put<br>the amount of any secured claims on *Schedule D:*<br>*Creditors Who Have Claims Secured by Property.*<br><br>**Current value of the   Current value of the**<br>**entire property?        portion you own?**<br><br>$   10,000.00   $   10,000.00 |

If you own or have more than one, describe here:

| | | |
|---|---|---|
| 3.2.  Make:          _____<br>Model:        _____<br>Year:         _____<br>Approximate mileage: _____<br>Other information:<br>[                    ] | **Who has an interest in the property?** Check one.<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br><br>☐ **Check if this is community property** (see instructions) | Do not deduct secured claims or exemptions. Put<br>the amount of any secured claims on *Schedule D:*<br>*Creditors Who Have Claims Secured by Property.*<br><br>**Current value of the   Current value of the**<br>**entire property?        portion you own?**<br><br>$_____   $_____ |

Debtor 1   **BRIAN**          **ROBERT**   **BULAROWSKI**                    Case number (if known) 19-50309
         First Name   Middle Name   Last Name

---

**3.3.** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

[          ]

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    Current value of the portion you own?

$_____    $_____

**3.4.** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

[          ]

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    Current value of the portion you own?

$_____    $_____

---

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

**4.1.** Make: _____

Model: _____

Year: _____

Other information:

[          ]

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    Current value of the portion you own?

$_____    $_____

If you own or have more than one, list here:

**4.2.** Make: _____

Model: _____

Year: _____

Other information:

[          ]

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?    Current value of the portion you own?

$_____    $_____

---

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here ................... →    $   10,000.00

---

Debtor 1    **BRIAN**    **ROBERT**    **BULAROWSKI**      Case number (if known) 19-50309

First Name    Middle Name    Last Name

## Part 3:  Describe Your Personal and Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
☑ Yes. Describe..........  furniture, appliances     $ 8,000.00

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No
☐ Yes. Describe..........  tv, computer     $ 1,000.00

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No
☐ Yes. Describe..........     $

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No
☐ Yes. Describe..........     $

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☑ No
☐ Yes. Describe..........     $

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe..........  clothing     $ 500.00

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☑ No
☐ Yes. Describe..........     $

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses

☑ No
☐ Yes. Describe..........     $

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information. ..........     $

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ................................................................ →     $ 9,500.00

Debtor 1    BRIAN          ROBERT          BULAKOWSKI                    Case number (if known) 19-50309
            First Name     Middle Name     Last Name

| Part 4: | Describe Your Financial Assets |
|---|---|

| Do you own or have any legal or equitable interest in any of the following? | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
  *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

  ☑ No
  ☐ Yes.............................................................................................................................................    Cash: ...................  $_____

**17. Deposits of money**
  *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

  ☐ No
  ☑ Yes....................              Institution name:

| | | | |
|---|---|---|---|
| | 17.1. Checking account: | Chase Bank | $        600.00 |
| | 17.2. Checking account: | | $_____ |
| | 17.3. Savings account: | | $_____ |
| | 17.4. Savings account: | | $_____ |
| | 17.5. Certificates of deposit: | | $_____ |
| | 17.6. Other financial account: | | $_____ |
| | 17.7. Other financial account: | | $_____ |
| | 17.8. Other financial account: | | $_____ |
| | 17.9. Other financial account: | | $_____ |

**18. Bonds, mutual funds, or publicly traded stocks**
  *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

  ☑ No
  ☐ Yes.................              Institution or issuer name:

  $_____
  $_____
  $_____

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

  ☑ No                              Name of entity:                                    % of ownership:
  ☐ Yes. Give specific                                                                0%____%      $_____
     information about                                                               0%____%      $_____
     them....................                                                        0%____%      $_____

Debtor 1    Case 19-50309    Doc 8    Filed 03/19/19    Entered 03/19/19 10:39:02    Case number (if known) 19-50309    age 6 of 27

BRIAN    ROBERT    BULAKOWSKI
First Name    Middle Name    Last Name

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

☐ Yes. Give specific    Issuer name:
information about
them............

$_____

$_____

$_____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No

☐ Yes. List each    Type of account:    Institution name:
account separately.

401(k) or similar plan:    _____    $_____

Pension plan:    _____    $_____

IRA:    _____    $_____

Retirement account:    _____    $_____

Keogh:    _____    $_____

Additional account:    _____    $_____

Additional account:    _____    $_____

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No

☐ Yes............    Institution name or individual:

Electric:    _____    $_____

Gas:    _____    $_____

Heating oil:    _____    $_____

Security deposit on rental unit:    _____    $_____

Prepaid rent:    _____    $_____

Telephone:    _____    $_____

Water:    _____    $_____

Rented furniture:    _____    $_____

Other:    _____    $_____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

☐ Yes............    Issuer name and description:

$_____

$_____

$_____

Debtor 1    BRIAN    ROBERT    BULAKOWSKI    Case number (if known) 19-50309
            First Name    Middle Name    Last Name

24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes .................    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____    $_____

_____    $_____

_____    $_____

25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit

☑ No

☐ Yes. Give specific information about them....    [                    ]    $_____

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific information about them....    [                    ]    $_____

27. Licenses, franchises, and other general intangibles
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☐ No

☑ Yes. Give specific information about them....    Massage Envy franchise    $         0.00

**Money or property owed to you?**    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. Tax refunds owed to you

☑ No

☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years. .....    [                    ]    Federal:    $_____
                                                                                                      State:    $_____
                                                                                                      Local:    $_____

29. Family support
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information............    [                    ]    Alimony:    $_____
                                                                        Maintenance:    $_____
                                                                        Support:    $_____
                                                                        Divorce settlement:    $_____
                                                                        Property settlement:    $_____

30. Other amounts someone owes you
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☑ No

☐ Yes. Give specific information............    [                    ]    $_____

Case 19-50309    Doc 8    Filed 03/19/19    Entered 03/19/19 10:39:02    Page 8 of 27

Debtor 1   BRIAN         ROBERT    BULKROWSKI                          Case number *(if known)* 19-50309
           First Name    Middle Name   Last Name

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company   Company name:                Beneficiary:              Surrender or refund value:
of each policy and list its value, ...
                                                                                            $_____

                                                                                            $_____

                                                                                            $_____

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

☐ Yes. Give specific information.............                                              $_____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim. ...................                                            $_____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

☐ Yes. Describe each claim. ...................                                            $_____

**35. Any financial assets you did not already list**

☑ No

☐ Yes. Give specific information............                                              $_____

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** .....................................................................................   →   $    600.00

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.

☐ Yes. Go to line 38.

                                                                    Current value of the portion you own?
                                                                    Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No

☐ Yes. Describe......                                                                      $_____

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No

☐ Yes. Describe ......                                                                     $_____

Case 19-50309   Doc 8   Filed 03/19/19   Entered 03/19/19 10:39:02   Page 9 of 27

Debtor 1   **BRIAN**   **ROBERT**   **BULAKOWSKI**   Case number (if known) 19-50309
          First Name   Middle Name   Last Name

40. **Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**
- ☐ No
- ☐ Yes. Describe......   $_____

41. **Inventory**
- ☐ No
- ☐ Yes. Describe......   $_____

42. **Interests in partnerships or joint ventures**
- ☐ No
- ☐ Yes. Describe.......   Name of entity:                           % of ownership:
  _____   ____%   $_____
  _____   ____%   $_____
  _____   ____%   $_____

43. **Customer lists, mailing lists, or other compilations**
- ☐ No
- ☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
  - ☐ No
  - ☐ Yes. Describe.......   $_____

44. **Any business-related property you did not already list**
- ☐ No
- ☐ Yes. Give specific
  information .........   _____   $_____
                         _____   $_____
                         _____   $_____
                         _____   $_____
                         _____   $_____
                         _____   $_____

45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
   for Part 5. Write that number here ...............................................................................................   →   $   0.00

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
- ☑ No. Go to Part 7.
- ☐ Yes. Go to line 47.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

47. **Farm animals**
   *Examples:* Livestock, poultry, farm-raised fish
- ☑ No
- ☐ Yes.....................   $_____

Case 19-50309    Doc 8    Filed 03/19/19    Entered 03/19/19 10:39:02    Page 10 of 27

Debtor 1  **BRIAN**  **ROBERT**  **BULAKOWSKI**  Case number *(if known)* 19-50309
First Name    Middle Name    Last Name

---

48. **Crops—either growing or harvested**

☑ No

☐ Yes. Give specific information..........    $_____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☑ No

☐ Yes..........    $_____

50. **Farm and fishing supplies, chemicals, and feed**

☑ No

☐ Yes..........    $_____

51. **Any farm- and commercial fishing-related property you did not already list**

☑ No

☐ Yes. Give specific information..........    $_____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ..........→    $        0.00

---

## Part 7:  Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
*Examples: Season tickets, country club membership*

☑ No

☐ Yes. Give specific information..........    $_____
$_____
$_____

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ..........→    $_____

---

## Part 8:  List the Totals of Each Part of this Form

55. Part 1: Total real estate, line 2 ..........→    $    500,000.00

56. Part 2: Total vehicles, line 5    $    10,000.00

57. Part 3: Total personal and household items, line 15    $    9,500.00

58. Part 4: Total financial assets, line 36    $    600.00

59. Part 5: Total business-related property, line 45    $    0.00

60. Part 6: Total farm- and fishing-related property, line 52    $    0.00

61. Part 7: Total other property not listed, line 54    +$    0.00

62. Total personal property. Add lines 56 through 61. ..........    $    20,100.00    Copy personal property total →   +$    20,100.00

63. Total of all property on Schedule A/B. Add line 55 + line 62 ..........    $    520,100.00

---

Official Form 106A/B    Schedule A/B: Property    page 10

**Fill in this information to identify your case:**

| Debtor 1 | BRIAN | ROBERT | BULAKOWSKI |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | | | |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: District of Connecticut

Case number 19-50309
(if known)

Exhibit F

☐ Check if this is an
   amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

04/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

**Part 1:   Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☑ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: 7 Rajcula Farm Rd<br>Line from Schedule A/B: 1.1 | $ 500,000.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: 2012 Jeep Cherokee<br>Line from Schedule A/B: 3.1 | $ 10,000.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: household items<br>Line from Schedule A/B: 15 | $ 9,500.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☑ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

   ☑ No

   ☐ Yes

Debtor 1    BRIAN            ROBERT        BULAKOWSKI        Case number (if known) 19-50309
            First Name    Middle Name    Last Name

## Part 2:    Additional Page

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: checking account<br>Line from Schedule A/B: 17.1 | $    600.00 | ☐ $ _____<br>☑ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from Schedule A/B: _____ | $ _____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |